BOLIVIAN INTERNATIONAL MINING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109059. Promulgated May 18, 1943.

*John F. Condon, Jr., Esq.,* and *Jack M. Evans, Esq.,* for the petitioner.

*P. J. Cavanaugh, Esq.,* for the respondent.

1112

OPINION.

STERNHAGEN, *Judge:* The question is whether the petitioner is entitled to a credit in the computation of undistributed profits surtax. Petitioner first claims under section 26 (c) (1), Revenue Act of 1936, under which the credit is dependent upon whether a distribution of dividends within the taxable year would have violated a provision of a written contract executed by the petitioner prior to May 1, 1936, which provision expressly deals with the payment of dividends. We can not find from the evidence that there was such a contract. There was correspondence between individuals in 1935 and a merger agreement in December 1935, but no written agreement of the corporation expressly dealing with the payment of dividends was executed by it before May 1, 1936. The merger agreement contained no such express provision; and if the shares had come into the hands of new people who were not individually bound by the Bonbright-Perry-Rogers correspondence, a dividend in excess of 12 cents a share would not have violated any express written contractual obligation of the corporation. It must be held, therefore, under section 26 (c) (1), that the credit was properly denied. *Henry Mill & Timber Co.*, 43 B. T. A. 1073; see *Caroline Mills* v. *Commissioner*, 126 Fed. (2d) 857; *Atlantic Co.* v. *Commissioner*, 129 Fed. (2d) 87; *Central West Coal Co.* v. *Commissioner*, 132 Fed. (2d) 190.

A decision has just come down from the Circuit Court of Appeals for the Sixth Circuit, *Automotive Parts Co.* v. *Commissioner*, 134 Fed. (2d) 420, to which the taxpayer calls attention; but that case is not in point, for it involved the question whether the preliminary promise by the corporation itself as to a restriction on dividends was to be regarded as among the terms of its agreement. In this case, as we have said, the corporation itself did not make such a promise, and the understanding among the shareholders and creditors can not be imputed to it for purpose of the tax credit.

The taxpayer, under subdivision 26 (f),[1] which was added by the Revenue Act of 1942, section 501, subdivision (a) (3), now claims a "deficit credit" of $43,268.17, being the difference between the adjusted

---

[1] (f) DEFICIT CREDIT.—The amount by which the adjusted net income exceeds the sum of (1) the earnings and profits accumulated after February 28, 1913, as of the beginning of the taxable year, and (2) the earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year). For the purposes of this subsection, earnings and profits of the taxable year shall be computed without diminution by the amount of the tax imposed under section 14, 102, 103, or 351 for such taxable year; and earnings and profits accumulated after February 28, 1913, as of the beginning of the taxable year, shall be diminished on account of the tax under section 14, 102, 103, or 351 for any previous taxable year only by the amount of such tax as computed under the amendments made by section 501 of the Revenue Act of 1942.

net income, $75,946.41, and the net amount, $32,678.24, of remaining earnings and profits, $87,984.01, as reduced by the deficit *$55,305.77* of prior years. This claim under the new statute is, however, not in accordance with its terms, and we find no room for interpretation in accordance with the taxpayer's view. According to the letter of the section, the credit is expressly defined without reference to a possible accumulated deficit instead of actual earnings for the prior period. It deals only with positive earnings and profits. It does not contemplate a minus or red figure in lieu of accumulated earnings. This language must dominate the section, rather than a colloquial meaning of the heading "deficit credit." Apparently the amendment of the statute was intended, for example, to mitigate a hardship for the class of taxpayers whose adjusted net income took no account, under the earlier statute, of capital losses in excess of the amounts deductible as such, and which therefore did not reduce the amount which mathematically seemed to be available for dividends. (See Ways and Means Committee Report No. 2333, p. 171.) So far as this record shows, there was no restriction upon this taxpayer, by reason of contract, statute or regulation, which required it to recoup the prior deficit out of the present earnings, or which otherwise prevented it from distributing the year's earnings in taxable dividends. Cf. *Bishop & Babcock Manufacturing Co.* v. *Commissioner*, 133 Fed. (2d) 199 (C. C. A., 6th Cir.); *Forest Producing Corporation* v. *Commissioner*, 132 Fed. (2d) 118 (C. C. A., 3d Cir.); *Inland Investors, Inc.* v. *Commissioner*, 132 Fed. (2d) 543 (C. C. A., 6th Cir.); *Great Lakes Coca-Cola Bottling Co.* v. *Commissioner*, 133 Fed. (2d) 953; *International Utilities Corporation*, I. T. C. 128.

Reviewed by the Court.

*Decision will be entered under Rule 50.*